**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MORGAN JONES, individually and on** | : | **CIVIL ACTION** |
| **behalf of all others similarly situated,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **No. 11-6910** |
| **v.** | : | |
| | : | |
| | : | |
| **JUDGE TECHNICAL SERVICES INC.,** | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                     **October 25, 2013**

<u>**MEMORANDUM OPINION**</u>

   Plaintiff, Morgan Jones, initiated this purported collective action against Defendant, Judge Technical Services Inc., for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u> ("FLSA"). Plaintiff's primary contention is that Defendant misclassified him and other employees as exempt from the FLSA'a overtime provisions under 29 U.S.C. § 213(a)(17) (the FLSA's computer-employee exemption), and subsequently failed to pay them overtime compensation.

   Several motions are currently before the Court:  Defendant's motion for sanctions (Doc. No. 83); Defendant's motion for partial summary judgment (Doc. No. 73); and Plaintiffs' motion to issue notice to similarly situated individuals (Doc. No. 67). For the reasons set forth below, Defendant's motion for sanctions will be granted in part, but not based upon sanctionable conduct; Defendant's motion for partial summary judgment will be denied; and Plaintiffs' motion to issue notice to similarly situated individuals will be granted.

## I.      FACTUAL AND PROCEDURAL HISTORY

Unless otherwise indicated, the following facts are undisputed:[1]

Defendant Judge Technical Services, Inc. is a staffing company that places individuals with specialized technical knowledge into temporary employment positions.  Placement is effectuated through recruiters, who locate individuals and match them with available job opportunities.  Once placed in a position, the individual remains the employee of Defendant, rather than the business for which the individual performs work.  Since November 2008, Defendant has placed thousands of individuals in positions in approximately forty states.  (Def.'s Stmt. of Undisputed Facts ¶¶ 1–2, 6.)

Defendant maintains a variety of pay structures for its employees.  The pay structures at issue are the "Professional Day" and "Professional Week" agreements, which apply only to employees who Defendant has classified as exempt under the FLSA's computer-employee exemption.  Under the "Professional Day" agreement, an employee "will not be paid for more than eight hours in a day, unless that employee works more than ten hours in a day.  If the employee works more than ten hours in a day and the manager approves, the employee will be entitled to be paid an additional fee for services provided after the 11th hour."  Under the "Professional Week" plan, employees receive a set hourly rate for every hour worked up to forty hours per week, and receive no additional compensation for hours worked in excess of forty

---

[1] In response to some paragraphs in Defendant's Statement of Undisputed Facts, Plaintiff denies a portion of the paragraph without stating facts that contradict the facts described by Defendant. We do not consider Plaintiff's unsubstantiated responses to create a factual dispute for the purpose of our analysis.  See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002) (noting that a non-movant may not rest upon mere allegations, general denials or vague statements to show that there is a genuine dispute of material fact); Robin Constr. Co. v. U.S., 345 F.2d 610, 613 (3d Cir. 1965) ("Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.") (internal quotation marks omitted).

hours per week.  (Id. at ¶¶ 10, 15-18) (alterations omitted).  Defendant considers employees designated under either structure as exempt under § 213(a)(17).

Plaintiff Morgan Jones initially contacted Defendant through one of its recruiters, Robert Helsel.  In July 2011, Defendant successfully placed Plaintiff in a position as Senior Project Manager with Citigroup.  When Plaintiff started at Citigroup, he was classified by Defendant as exempt from the FLSA's overtime requirements under 29 U.S.C. § 213(a)(17) and was subject to Defendant's "Professional Day" pay plan.  (Id. at ¶¶ 20, 27, 30-31, 51.)

Like Defendant's other employees, Plaintiff was required to enter his daily hours into Defendant's "EaZyTyme system," an online-based time reporting system maintained and controlled by Defendant.  In addition to reporting his time in EaZyTyme, Plaintiff also reported his work hours directly to Citigroup for purposes of effectuating payment from Citigroup to Defendant for Plaintiff's work.  During his placement with Citigroup, Plaintiff routinely worked over forty hours per week and occasionally over fifty hours per week.  (Id. at ¶¶ 39-40, 46, 52.) Beginning on November 14, 2011, Plaintiff was taken out of the Professional Day structure and paid on an hourly basis.  (Id. at ¶¶ 13-14, 56-57.)

On November 3, 2011, Plaintiff filed the purported FLSA collective action and subsequently filed a "Motion to Issue Notice to Similarly Situated Persons Pursuant to 29 U.S.C § 216(b)."  Defendant filed its response in opposition to Plaintiff's motion on January 22, 2013, and the next day filed a "Motion for Partial Summary Judgment."  Plaintiff's response to this motion was filed on February 22, 2013.  Attached to Plaintiff's response was the declaration of Judith Kramer, a former attorney with the United States Department of Labor.  On February 28, 2013, Defendant filed a "Motion for Sanctions Pursuant to Rule 37 in Respect to the Declaration of the Putative Expert Judith Kramer."

On April 4, 2013, oral argument was held.  The motions are fully briefed and ready for disposition.  We address each in turn.

## II.   DEFENDANT'S MOTION FOR SANCTIONS

In its motion for sanctions, Defendant requests that the Court strike the declaration of Judith Kramer, which is attached to Plaintiff's response in opposition to Defendant's motion for partial summary judgment.  Defendant also request that fees and costs be awarded.  Defendant asserts that Plaintiff violated his discovery obligations by failing to disclose Kramer as a witness under Federal Rules of Evidence 26(a)(1) and 26(e), and that this failure is prejudicial because it deprived Defendant of the opportunity to depose Kramer during the discovery period.  Defendant urges that we exclude Kramer's declaration because it merely offers a legal conclusion and is thus inadmissible.  (Def.'s Br. in Support of Mot. for Sanctions 4, 5-9.)

Plaintiff responds that this Court's September 14, 2012 Scheduling Order made no mention of expert discovery deadlines,[2] and that Kramer was retained as an expert less than two weeks before her declaration was attached to his response.  Plaintiff acknowledges that he did not supplement his initial disclosures or interrogatory answers to identify Kramer as an expert before he filed his response, but notes that he offered to supplement his initial disclosures and discovery responses, produce Kramer for deposition and support a request to extend the summary judgment briefing schedule to allow Defendant to submit a reply brief addressing the declaration.  Plaintiff also posits that Kramer's declaration is admissible because it is based on specialized knowledge that will assist the Court in its determination of liability.  (Pl.'s Br. in Opp'n to Def.'s Mot. for Sanctions 3-4, 6-7, 9-14.)

---

[2]  At a Rule 16 conference held on March 5, 2012, wherein a discovery schedule was discussed, we decided that management of the case was best served by resolving the Defendant's motion to strike the collective action allegations before moving forward with discovery.  Therefore, we did not set deadlines for expert discovery.

### A.     Legal Standards

Federal Rule of Civil Procedure 37(c)(1) permits a court to exclude evidence and impose sanctions where a party "fails to provide information or identify a witness as required in Rule 26(a) or (e)."  Under such circumstances, the non-producing party "is not allowed to use [the undisclosed] information or witness to supply evidence on a motion, at a hearing, or at a trial" unless it demonstrates that its conduct was substantially justified or is harmless.  FED. R. CIV. P. 37(c)(1); Waites v. Kirkbride Ctr., 2012 WL 3104503, at *6 (E.D. Pa. July 30, 2012).   The imposition of sanctions for abuse of discovery under Rule 37 is within the sound discretion of the trial court.  Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995).

In determining whether to exclude evidence, a district court must consider the following factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.  Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000).  The United States Court of Appeals for the Third Circuit has cautioned that exclusion of evidence is an "extreme sanction" for a violation of a discovery order.   In re TMI Litig., 193 F.3d 613, 621 (3d Cir. 1999).

In cases where the timeliness of disclosing expert identities and reports is at issue, a request for exclusion is typically granted only where the trial date is fast approaching.  Ciocca v. BJ.'s Wholesale Club, Inc., 2011 WL 3563560, at *5 (E.D. Pa. Aug. 12, 2011); see also Womack

v. Smith, 2012 WL 1245752, at *10 (M.D. Pa. Apr. 13, 2012) (excluding testimony of lay witnesses where trial was "mere weeks" away); Klatch-Maynard v. Sugarloaf Twp., 2011 WL 2006424, at *3-*5 (M.D. Pa. May 23, 2011) (excluding testimony where expert reports were filed "on the eve of trial" and over three-and-a-half years after the deadline for expert reports passed). Further, with respect to the final Nicholas element, bad faith conduct in the context of untimely expert disclosures is generally only found where the conduct could be deemed to have been done "to gain a tactical advantage." Ciocca, 2011 WL 3563560, at *5 (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 720-21 (3d Cir. 1997)). Questionable practices or conduct on counsel's part by "failing to communicate" with the court or opposing counsel typically do not "rise to the level of bad faith." Id. at *5.

Even where there is no discovery violation, an expert declaration can be excluded if it falls outside the permissible scope of Federal Rule of Evidence 702. See Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995) (noting that only evidence which is admissible at trial may be considered in ruling on a summary judgment motion). This determination is also left to the discretion of the trial court. United States v. Leo, 941 F.2d 181, 196 (3d Cir.1991). In exercising this discretion, the court "must ensure that an expert does not testify as to the governing law of the case." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006).

Although Federal Rule of Evidence 704(a) allows an expert witness to give expert testimony that embraces an ultimate issue to be decided by the trier of fact, an expert witness is prohibited from rendering a legal opinion. Id. This standard is no different for a witness who is qualified as an expert and is also an attorney. Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefits Plan & Trust Agreement, 812 F. Supp. 1376, 1378 (E.D.Pa.1992) (holding that

expert testimony as to whether employer's practice violated ERISA was an inadmissible legal conclusion).  Ultimately, district courts prohibit experts from offering legal opinions because such testimony is not helpful to the trier of fact.  See Leo, 941 F.2d at 197.  In other words, an expert's legal opinion is prohibited when "it would usurp the District Court's pivotal role in explaining the law to the jury."  Berckeley, 455 F.3d at 217.

B.      Analysis – The Judith E. Kramer Declaration

We need not rule upon Defendant's request that we exclude the Kramer declaration due to discovery violations because we find that Kramer's declaration is inadmissible as improperly offering a legal opinion.  The declaration is used to support Plaintiff's legal interpretation of the computer-employee exemption, which is a question of law for the Court to decide.  Further, the declaration provides impermissible legal conclusions rather than evidence that would assist the trier of fact in determining a fact at issue.  Therefore, we will not consider Kramer's declaration in evaluating Defendant's motion for partial summary judgment.

We note that even if we were to find that Plaintiff's failure to immediately supplement his disclosures to identify Kramer violated Rule 26(e), exclusion of the declaration may not be warranted under Rule 37.  A trial date has not been set nor is it clear that Plaintiff's failure to supplement was willful or in bad faith.   Indeed, Plaintiff offered to cure any prejudice by supplementing his initial disclosures and discovery responses, produce Kramer for deposition and consent to a request to extend the summary judgment briefing schedule to allow Defendant to submit a reply brief addressing Kramer's declaration.

III.     DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant has filed four counterclaim causes of action:  Computer Fraud and Abuse; Common Law Fraud; Breach of Fiduciary Duty; and Conversion.  Defendant has moved for

partial summary judgment on its counterclaims for fraud and conversion, and on Plaintiff's retaliation and FLSA claims.  We address each argument in turn.

### A.      Legal Standard – Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  An issue is "genuine" if there is sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  Kaucher v. Cnty of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material if it might affect the outcome of the case under governing law.  Id. (citing Anderson, 477 U.S. at 248).  Under Rule 56 the court must view evidence in the light most favorable to the nonmoving party.  Galena v. Lone, 638 F,3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment.  Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa, 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 485, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  FED. R. CIV. P. 56(c)(1)(A)-(B).  Only evidence which is admissible at trial may be considered in ruling on the motion.  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995).

### B.     Defendant's Fraud and Conversion Counterclaims

Defendant has moved for summary judgment on its own counterclaims filed against Plaintiff.   The facts regarding these counterclaims pertain to Plaintiff's entry of hours in Defendant's timekeeping system.[3]   On at least three occasions, Plaintiff entered hours in EaZyTyme that did not correspond to the hours he worked at Citigroup for that particular week. The entry relevant to Defendant's motion concerns the week ending October 30, 2011.[4]  During this week, Plaintiff entered that he had worked seventy hours in EaZyTyme, but only entered fifty hours in the Citigroup timekeeping system.

Plaintiff admits that he only worked the hours entered in Citigroup's system, but at deposition he explained that he entered seventy hours in EaZyTyme at the direction of his recruiter, Robert Helsel.  Plaintiff explained that the purpose of entering additional hours was to obtain compensation for hours of unpaid time he had previously worked.  Plaintiff also testified that he indicated in the comment section of his October timesheet the basis for over-reporting his

---

[3] Unless otherwise indicated, the facts surrounding the counterclaims are undisputed.

[4]  In its reply brief, Defendant clarifies that, while it intends to prove that Plaintiff committed timecard fraud with respect to other weeks, the week ending October 30, 2011 is the only week for which it seeks summary judgment.  (Def.'s Reply Br. 3 n.2.)

hours, again at Helsel's directive.     (Def.'s Stmt. of Undisputed Facts ¶¶ 63–64, 67–68; Pl.'s Stmt. of Genuine Issues ¶¶ 66.)

Defendant counters that Helsel never instructed Plaintiff to over-report his time in order to receive additional compensation, nor did Helsel possess the authority to permit Plaintiff to enter falsified time entries or to alter the terms of his compensation.  Plaintiff responds that his Assignment Agreement specifically stated that questions about pay should be directed to his recruiter, Helsel, or Defendant's general counsel.  (Def.'s Stmt. of Undisputed Facts ¶¶ 70-72; Pl.'s Stmt. of Genuine Issues ¶¶ 71-72.)

Plaintiff also points out that Defendant billed Citigroup for the seventy hours he entered in EaZyTyme, and that his supervisor at Citigroup approved the EaZyTyme hours.  He also cites to the testimony of Defendant's Chief Operating Officer, Katy Wiercinski, who testified that if Citigroup approved hours, then Defendant would have billed Citigroup for that time.  However, Wiercinski stated that she was unsure of whether Citigroup had approved the hours at issue. (Pl.'s Stmt. of Undisputed Facts ¶ 18; Pl.'s Stmt. of Genuine Issues ¶¶ 66.)

### 1.      Legal Standards – Fraud and Conversion

To prevail on a claim for fraud under Pennsylvania law,[5] a plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).

To succeed on a cause of action for conversion, a plaintiff must prove facts to support that a defendant intentionally acted to deprive plaintiff of his right in property in, or use or

---

[5] The parties agree that Pennsylvania law governs Defendant's state law counterclaims.

possession of, a chattel, or other interference therewith, without the plaintiff's consent and without lawful justification.  Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964).  Money is considered a chattel for these purposes and may be the subject of conversion. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987).

### 2.    Analysis

Defendant urges that the undisputed facts establish that Plaintiff deliberately falsified his hours as part of a successful effort to extract from Defendant compensation to which he was not entitled, and that he continues to wrongfully retain those funds.  Defendant also contends that Plaintiff's contention that Helsel provided him with a license to defraud Defendant fails because Helsel did not possess either actual or apparent authority to do so.  (Def.'s Br. in Support of Mot. for Partial Summ. J. 2–6.)[6]

We conclude that the facts surrounding Defendant's counterclaims present classic issues of disputed material facts.  With respect to Defendant's fraud claim, there are factual issues relating to whether Plaintiff had the intent to mislead Defendant when he over-reported hours in the EaZyTyme system.  Plaintiff has presented evidence from which a factfinder could conclude that Helsel authorized the inflated hours and that he had the apparent authority to do so.  The nature and extent of Helsel's authority, and Plaintiff's conduct in relation to his belief of that authority, are genuine issues of material fact for the factfinder to determine.

---

[6] Pennsylvania law recognizes both actual and apparent authority.  Stout Street Funding LLC v. Johnson, 873 F. Supp. 2d 632, 641 (E.D. Pa. 2012).  "Actual authority is the authority a principal expressly grants to an agent, while apparent authority exists where the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise."  City of Phila. v. One Reading Ctr. Assocs., 143 F. Supp. 2d 508, 517 (E.D. Pa. 2001) (citations omitted) (internal quotation marks omitted).  The nature and extent of an agent's authority is a question of fact for the factfinder.  Hydraulics, Inc. v. Susquehanna Const. Corp., 606 A.2d 532, 534-35 (Pa. Super. Ct. 1992).

There also is a genuine issue of fact as to whether Defendant sustained any injury. Defendant asserts that it suffered an economic injury in the amount of $955.80, in that it paid Plaintiff for twenty additional hours not performed the week ending October 30, 2011. However, according to Plaintiff, his Citigroup supervisor approved those hours.  If Citigroup was billed and paid Defendant for Plaintiff's hours, it is unclear whether Defendant would still have an injury.

Additionally, because the factual issues above also relate to whether Plaintiff was given permission to inflate his time entries, summary judgment is also inappropriate with respect to Defendant's conversion counterclaim.

### C.    Plaintiff's Retaliation Claim

Defendant next seeks summary judgment on Plaintiff's retaliation claim.  In this claim, Plaintiff alleges that, as a result of the filing of the instant FLSA action, Defendant engaged in adverse actions against him.

### 1.    Legal Standard

In analyzing a claim of unlawful retaliation under the FLSA, we look to the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Cononie v. Allegheny Gen. Hosp., 29 Fed. Appx. 94, 95 (3d Cir. 2002).  Under this framework, a plaintiff must first establish a prima facie case by proving: (1) that he engaged in activity protected under the FLSA; (2) that he subsequently or contemporaneously suffered an adverse employment action; and (3) a causal connection between his protected activity and the employer's adverse action.  Wildi v. Alle-Kiski Med. Ctr., 659 F. Supp. 2d 640, 664 (W.D. Pa. 2009).

To satisfy the second prong of his prima facie case, a plaintiff must demonstrate that he suffered a materially adverse action—that is, an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 665 (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). A counterclaim may constitute a materially adverse action, but courts have generally required a plaintiff to demonstrate that the counterclaim is baseless in order to satisfy this element. See e.g., Ergo v. Int'l Merchant Servs., Inc., 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007); Ramos v. Hoyle, 2009 WL 2151305, at *8 (S.D. Fla. July 16, 2009).

With respect to the causal link element, two main factors are relevant: (1) timing or (2) evidence of ongoing antagonism. Wildi, 659 F. Supp. 2d at 666. A plaintiff may rely on a broad array of evidence to establish a causal link between his complaints and the materially adverse action. Id. An unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection. Id.

If a plaintiff demonstrates a prima facie case, then the burden shifts to the employer to produce a legitimate, nonretaliatory reason for the adverse action. Id. at 664. If the employer meets that burden, then the ultimate burden of persuasion shifts back to the plaintiff to demonstrate that the articulated reasons are a pretext for discrimination. Id.

### 2.    Analysis

Defendant contends that Plaintiff has presented insufficient evidence that he suffered an adverse action. Specifically, Defendant asserts that the filing of its counterclaims cannot constitute an adverse action because the claims are not baseless. A counterclaim is baseless when it is frivolous—that is, sanctionable. See Ergo, 519 F. Supp. 2d at 781. Where a claim is presented for a proper purpose, is warranted by existing law and is premised on factual

contentions that have evidentiary support, it will not be deemed frivolous.  See FED. R. CIV. P. 11(b).

Plaintiff responds that the counterclaims for fraud and conversion are baseless because his supervisor at Judge, Robert Helsel, instructed him to report extra time for the week ending October 30, 2011 to make up for unpaid time he had previously worked.  As noted previously, Defendant denies this allegation.[7]  Because there is a genuine dispute as to whether Plaintiff was instructed to over-report his time, we do not find the counterclaims baseless on this ground.

Plaintiff also contends the claims are baseless because Defendant did not sustain a cognizable injury.  (See supra Part III.B.)  Because the record does not clearly show whether or not Defendant received payment from Citigroup for the hours Plaintiff reported, there is a question as to whether Defendant suffered an injury as a result of Plaintiff's actions.  Therefore, we decline to enter summary judgment on the basis that Plaintiff cannot demonstrate an adverse action.[8]

Defendant also asserts that Plaintiff has failed to demonstrate a causal connection between his protected activity and an adverse action.  Because we find that a jury could conclude that at least two of Defendant's counterclaims were baseless, we evaluate the causal connection with respect to that adverse action.

Plaintiff has presented evidence that Defendant filed its counterclaims less than eleven weeks after Plaintiff filed his initial complaint.  (See Doc. Nos. 1, 22.)  This close temporal proximity is sufficient to overcome Defendant's motion.  See Fasold v. Justice, 409 F.3d 178,

---

[7] At his deposition, Helsel stated he never instructed Plaintiff to over-report his time to make up for unpaid time.  (Helsel Dep. 82.)

[8] Because it will not affect the disposition of this motion, we decline to address Defendant's counterclaims for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and conversion at this time.

190 (3d Cir. 2005) (passage of less than three months between protected activity and adverse action may give rise to an inference of causation).  Therefore, Defendant's motion for partial summary judgment is denied with respect to Plaintiff's retaliation claim.[9]

**D.     FLSA Claim**

Defendant also argues that it is entitled to summary judgment on Plaintiff's FLSA claim for misclassification under 29 U.S.C. § 213(a)(17), the computer-employee exemption.  This provision states that the FLSA's minimum wage and maximum hours provisions (29 U.S.C. §§ 206 and 207) shall not apply with respect to:

> any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is--
>
> > (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
> >
> > (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

---

[9] We note that it is unclear whether Plaintiff is also basing his retaliation claim on his termination.  (Compare Fourth Am. Compl. ¶¶ 29-30 (treating termination as separate adverse action) with Pl.'s Br. in Opp'n to Def.'s Mot. for Partial Summ. J. 15 (treating termination as an antagonistic act in support of the causal connection requirement)).  Regardless, we find that Plaintiff has not set forth a genuine issue of material fact that Defendant terminated him because he initiated the instant lawsuit.  First, Plaintiff has presented no evidence to demonstrate that Defendant, rather than Citigroup, terminated his placement.  (See Pl.'s Stmt. of Genuine Issues ¶ 78.)  Further, to the extent that Plaintiff claims that Defendant retaliated again him by failing to engage in a good faith effort to place him with another company after his Citigroup placement terminated, Plaintiff has offered no evidence beyond unsupported assertions or mere suspicions to support his contention.  Indeed, with respect to Plaintiff's assertion that Defendant "rop[ed] him into a sham job placement effort for a position that had already been filled," Plaintiff's evidence that the position was filled is inadmissible hearsay.  Even assuming that the position was filled, Plaintiff has presented no evidence that Defendant had knowledge of this fact.  Further, Plaintiff has not come forward with any other evidence that Defendant did not act diligently in attempting to place him in another position  (See Jones' Dep. 293-95, 343-45, 353-55.)  Plaintiff's unsupported beliefs are legally insufficient to establish an issue of material fact.

(C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or

(D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17).  This exemption thus has two criteria: (1) that the employee perform certain "primary duties"; and (2) that he be compensated at a rate of at least $27.63 an hour.

Defendant asserts that it is entitled to judgment on the second criteria, reasoning that the requirement is met so long as an employee is paid an <u>average</u> hourly wage of $27.63 or more in a given workweek (hereinafter, "the workweek method").  Defendant explains that because it is undisputed that, in any given week, Plaintiff was always paid an average hourly wage well above $27.63, there is no dispute that the exemption's $27.63 requirement is met.  (Def.'s Br. in Support of Mot. for Partial Summ. J. 7-14.)

Plaintiff counters that the statute sets forth an hour-by-hour, rather than an averaging, approach, and thus computer employees must be paid at least $27.63 for each hour worked (hereinafter, "the hour-by-hour method").  Because Plaintiff was paid $0.00 for hours nine and ten while he was paid under the "Professional Day" structure, he argues that the exemption's second requirement was not met and he was thus misclassified as exempt.  (Pl.'s Br. in Opp'n to Mot. for Partial Summ. J. 9-12.)

To resolve the parties' dispute, we must interpret the computer-employee exemption.

### 1.    Legal Standard

The initial step in interpreting a statute is to determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  <u>Valansi v.</u>

Ashcroft, 278 F.3d 203, 209 (3d Cir. 2002) (quoting Marshak v. Treadwell, 240 F.3d184, 192 (3d Cir. 2001) (internal quotation marks omitted)).  Where the language of the statute is clear, our inquiry is complete.   In re Phila. Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010). However, if the language is ambiguous—that is, "reasonably susceptible of different interpretations"—we must attempt to discern Congress' intent.  Dobrek v. Phelan, 419 F.3d 259, 264 (3d Cir. 2005) (quoting Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co., 470 U.S. 451, 473 n.27 (1985)).

Courts traditionally examine "the legislative history and the atmosphere in which the statute was enacted" to determine congressional intent.  United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000).  Courts should also "look to the reading [of the language] that 'best accords with the overall purposes of the statute.'"  United States v. Introcaso, 506 F.3d 260, 267 (3d Cir. 2007) (quoting Nugent v. Ashcroft, 367 F.3d 162, 170 (3d Cir. 2004)).  Additionally, where, as here, the statute at issue is within the scope of an agency's rulemaking and lawmaking authority, that agency's reasonable interpretation should be deferred to in resolving any ambiguity. Mehboob v. Att'y Gen. of the U.S. 549 F.3d 272, 275 (3d Cir. 2008); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

2.    **Analysis**

With the above precepts in mind, and after examination of the statutory language, the Department of Labor regulations and the canons of construction applicable to FLSA exemptions, we conclude that an employee paid on an hourly basis may only be classified as exempt under 29 U.S.C. § 213(a)(17) if that employee is compensated at least $27.63 for each and every hour he or she works.

We initially find that the statutory language is susceptible to different interpretations. Neither the FLSA nor the implementing regulations set forth a formula for determining whether an employee has received "not less than $27.63 an hour," and both parties have presented plausible interpretations of the provision.  That said, it appears that a more exact reading of the language is that it requires an employer to pay the requisite sum for each and every hour worked. Indeed, the language of the provision in question specifically refers to compensation on an "hourly basis," and is silent regarding the use of a weekly or averaging basis.

Defendant argues we should treat the $27.63 hourly rate as a minimum wage provision, and points to Dove v. Coupe, 759 F.2d 167, 171-72 (D.C. Cir. 1985), a case which allowed a minimum wage requirement to be met by looking at the average of hours worked.  While we have carefully considered Dove, we decline to follow its holding, in part because that case focused on minimum wage requirements while the issue before us is Defendant's exempting Plaintiff from overtime compensation.

Defendant also posits that applying the workweek standard effectuates congressional intent.  Defendant asserts that the averaging approach ensures that the purpose of the minimum wage—the protection of "certain groups of the population from sub-standard wages . . . due to . . . unequal bargaining power," Dove, 759 F.2d at 171 (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945) (internal quotation marks omitted))—is met.  Defendant further argues that the Department of Labor's Wage & Hour Division has adopted the workweek as the period for determining whether an employee has received wages at a rate not less than the statutory minimum, and that this interpretation of the statute is entitled to deference.  (Def.'s Br. in Support of Mot. for Partial Summ. J. 8-10.)  Again, Defendant's arguments focus on minimum wage theories not at issue here.

We agree with Plaintiff's view that, based on the allegations raised in this case, the $27.63 requirement is not a minimum wage test, but rather a compensation test for applicability of the exemption pertaining to overtime.  Plaintiff correctly stresses that Defendant's argument fails to recognize that his claims are for unpaid overtime under § 207, not for unpaid minimum wages under § 206, and that there is a significant distinction between those provisions. Section 206 is directed at providing a minimum standard of living while § 207 is concerned with deterring long hours by making those hours more expensive for the employer.  In light of these two separate provisions, we conclude that Defendant's reliance on minimum wage arguments and case law is misplaced.  The fact that § 213(a) refers to both §§ 206 and 207 does not mean, as Defendant urges, that the overtime provisions of § 207 can be conflated with minimum wage principles.

The parties also dispute which construction of § 213(a)(17) best effectuates the purpose of the FLSA.  Because neither legislative history nor the regulations clarify whether the computer-employee exemption's $27.63 requirement is to be calculated on a weekly or hourly basis, our determination must necessarily rest on a construction that "best accords with the overall purposes of the statute."  United States v. Introcaso, 506 F.3d 260, 267 (3d Cir. 2007) (internal quotation marks omitted).

Plaintiff argues that the FLSA is remedial in nature, and thus should be construed liberally in favor of employees.  He also notes that, in light of this remedial purpose, courts have consistently found that FLSA exemptions must be narrowly construed, that is, against the employer.  (Pls.' Br. in Opp'n to Mot. for Partial Summ. J. 9-10.)  Defendant counters that, because the FLSA contains criminal penalties for violations of the minimum wage and overtime requirements, the rule of lenity dictates that a less harsh meaning should be applied in

interpreting the computer-employee exemption.  (Def.'s Br. in Support of Mot. for Partial Summ. J. 10-11.)

Courts are to apply the rule of lenity only if, "after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.'"  Barber v. Thomas, 130 S.Ct. 2499, 2508-09 (2010) (quoting Muscarello v. United States, 524 U.S. 125, 139 (1998)).  In other words, the rule of lenity's application is limited to instances in which a court "can make no more than a guess as to what Congress intended."  United States v. Wells, 519 U.S. 482, 499 (1997) (quoting Reno v. Koray, 515 U.S. 50, 65 (1995) (internal quotation marks omitted)).  That is not the case here.

While the relevant unit for determining compliance with the computer-employee exemption's compensation requirement is less than clear, and appears to be a matter of first impression, the appropriate construction of FLSA exemptions is not.  The United States Court of Appeals for the Third Circuit has held that the FLSA must be construed liberally in favor of employees, and that statutory exemptions should thus be construed narrowly.  Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985), Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) and Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).  Therefore, an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes 'plainly and unmistakably' within the exemption's terms and spirit.  Id. (quoting Arnold, 361 U.S. at 392) (emphasis omitted).

With the above canon of construction in mind, we conclude that the hour-by-hour approach advocated by Plaintiff best accords with the remedial nature of the FLSA.  Exemptions are to be construed narrowly and their application must be established by the employer.

Defendant has not persuaded us that the computer-employee exemption "plainly and unmistakably" applies.   Nor has Defendant demonstrated that its proposed interpretation is required by the plain language of the provision, that the legislative history or regulations support its interpretation, or that the interpretation best accords with the purpose of the FLSA. Therefore, we find that, as a matter of law, the computer-employee exemption is applicable only where, assuming the primary duties test is met, an employee paid on an hourly basis receives compensation at a rate of $27.63 for each and every hour worked.

Applying this standard, we conclude that Plaintiff was misclassified as exempt under § 213(a)(17).   Accordingly, we will deny Defendant's motion for partial summary judgment with respect to this claim.

## IV.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiff Jones and opt-in Plaintiff Kenneth Webb seek to conditionally certify the instant case as a collective action under the FLSA.   Plaintiffs propose that the class consist of:

> All current and former workers employed by The Judge Group, Inc. and assigned to a "Professional Day" or "Professional Week" Pay Plan at any time from (3 years before the facilitation of notice), to the present.

(See Pls.' Reply Br. in Support of Mot. to Issue Notice, Ex. A.)

Under the FLSA, employees may bring a collective action on behalf of "themselves and other employees similarly situated."   29 U.S.C. § 216(b).   Although the FLSA does not define "similarly situated," the phrase contemplates individuals "employed under the same terms and conditions."   Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 190-91 (M.D. Pa. 2008).

In deciding whether a suit brought under § 216(b) of the FLSA may move forward as a collective action, courts typically employ a two-tiered analysis.   Initially, a plaintiff seeking to maintain a collective action must make a "modest factual showing" that the employees in the

putative class are similarly situated to him.  A plaintiff meets this burden by producing "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192-93 (3d Cir. 2011), rev'd on other grounds, 133 S. Ct. 1523 (2013).

If the plaintiff meets his burden during the initial phase, the class will be conditionally certified for purposes of notice and pre-trial discovery.  After discovery, the plaintiff's burden is more onerous; he must show by a preponderance of the evidence that he is similarly situated to each plaintiff who has opted in to the collective action.  Id.

Here, we find that Plaintiffs have met their initial burden in demonstrating that they are similarly situated to the following class members:

> All current and former workers employed by The Judge Group, Inc. and assigned to a "Professional Day" or "Professional Week" Pay Plan who worked in excess of forty hours in a given week at any time from (3 years before the facilitation of notice), to the present.

Plaintiffs have set forth evidence that they and the proposed class members were subject to Defendant's "Professional Day" and "Professional Week" pay plans; that these plans exist in multiple states; that under these plans, each was classified as exempt pursuant to the FLSA's computer-employee exemption; that the employees recorded their hours in the same fashion in Defendant's EaZyTyme program; that employees subject to the plans would be paid $0.00 for certain hours worked in excess of forty; that, as discussed in Part III.D, failure to pay $27.63 for each hour worked renders the exemption inapplicable and places Defendant in violation of the FLSA's overtime provision; and that the employees were misclassified as exempt because of the way each was compensated.  Therefore, the proposed class members, including named Plaintiff

Jones and opt-in Plaintiff Webb, were all potentially affected the same way by Defendant's policy of exempting employees.  See Craig v. Rite Aid Corp., 2009 WL 4723286, at *3 (M.D. Pa. Dec. 9, 2009) (finding that a collective class of employees, who were alleged to be misclassified as exempt, is appropriate for conditional certification).

Accordingly, we will conditionally certify the class, as modified above, and permit them to issue their proposed form of notice.[10]

## V.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Sanctions will be granted in part and denied in part, Defendant's Motion for Summary Judgment will be denied and Plaintiffs' Motion for Class Certification will be granted.

An appropriate Order follows.

---

[10] We find that the proposed notice attached as Exhibit A to Plaintiffs' reply brief is fair and adequate.  However, we note that the notice states that "[t]he Court has not yet taken any position on whether Plaintiff's claims have any merit."  This statement is no longer applicable given our summary judgment determination.  As such, Plaintiffs may file an amended proposed notice within ten days of entry of this Memorandum Opinion.  Defendant may file a response to such notice within seven days thereafter.