IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORGAN JONES, individually and on Behalf of all others similarly situated, Plaintiff, | : : : : | CIVIL ACTION |
| | : | No. 11-6910 |
| v. | : : : | |
| JUDGE TECHNICAL SERVICES INC., Defendant. | : : | |

Goldberg, J.                                                                      August 6, 2014

**MEMORANDUM OPINION**

## I.      INTRODUCTION

Plaintiff Morgan Jones initiated this action against Defendant, Judge Technical Services Inc., for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), alleging that Defendant misclassified him and other employees as exempt from the FLSA's overtime compensation provision under 29 U.S.C. § 213(a)(17) (the FLSA's computer-employee exemption), and subsequently failed to pay them overtime compensation.  Through an Opinion dated October 25, 2013, we concluded that Defendant's method of calculating overtime did not comport with the FLSA.  (Mem. Op., 10/25/2013.)  Since that ruling, fifty-one Plaintiffs have opted into the collective action.

Currently before the Court is Defendant's "Motion to Dismiss Claims of Opt-In Plaintiffs Demrow, Harris, Shah, Anepete, Govoni-Drygal, Givens-Walker, Chowdhury, Richtiger, and Wise" (collectively, "Arbitration Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant raises this motion based upon an arbitration agreement between Defendant

1

and the Arbitration Plaintiffs.  For the reasons set forth below, Defendant's motion will be granted.

## II.      FACTUAL AND PROCEDURAL HISTORY

Defendant Judge Technical Services, Inc. is a staffing company that places individuals with specialized technical knowledge into temporary employment positions.  Placement is effectuated through recruiters, who locate individuals and match them with available job opportunities.  Once placed in a position, the individual remains the employee of Defendant, rather than the business for which the individual performs work.  Since November 2008, Defendant has placed thousands of individuals in positions in approximately forty states.  (Mem. Op., 10/25/2013, p. 2.)

On November 3, 2011, Plaintiff Jones filed this FLSA collective action challenging the legality of Defendant's "Professional Day" and "Professional Week" pay structures.  Under the "Professional Day" agreement, an employee "will not be paid for more than eight hours in a day, unless that employee works more than ten hours in a day.  If the employee works more than ten hours in a day and the manager approves, the employee will be entitled to be paid an additional fee for services provided after the 11th hour."  Under the "Professional Week" plan, employees receive a set hourly rate for every hour worked up to forty hours per week, and receive no additional compensation for hours worked in excess of forty hours per week.  Defendant designated employees working under either structure as exempt from the FLSA's overtime provisions under § 213(a)(17)'s computer employee exemption.  (Id. at 2-3.)

On October 25, 2013, we denied Defendant's motion for summary judgment, concluding that the "Professional Day" and "Professional Week" pay plans violate the FLSA.  Shortly thereafter, we approved the issuance of notice to the following individuals:

> All current and former workers employed by The Judge Group, Inc. and assigned
> to a "Professional Day" or "Professional Week" Pay Plan who worked in excess
> of forty hours in a given week at any time from (3 years before the facilitation of
> notice), to the present.

(Id. at 12.)

Between November 21, 2013 and March 21, 2014, Arbitration Plaintiffs Demrow (Nov. 21, 2013), Harris (Dec. 20, 2013), Shah (Jan. 10, 2014), Anepete (Jan. 30, 2014), Govoni-Drygal (Feb. 7, 0214), Givens-Walker (Feb. 7, 2014), Chowdhury (Mar. 21, 2014), Richtiger (Mar. 21, 2014), and Wise (Mar. 21, 2014) opted into the collective action.  Each Arbitration Plaintiff began his or her employment with Defendant subsequent to the commencement of this litigation. Their respective employment contracts outline hourly wage and overtime payment plans in accordance with the disputed "Professional Day" system.  Importantly, each contract includes an arbitration clause, contained within the "Temporary W-2 Assignment Agreement," which contains the following relevant phrases:

> I understand and agree that any controversy, dispute, or claim between the parties
> to this agreement, including any claim that is related to this agreement, my
> employment or the termination of my employment with Judge, or disputes
> regarding the validity of this provision, shall be settled exclusively by arbitration.
> The requirement to arbitrate disputes applies, but is not limited to, disputes
> regarding the Fair Labor Standards Act . . . . I understand that final and binding
> arbitration will be the sole and exclusive remedy for any such claims or disputes
> against Judge . . . .

> I understand there will be no right or authority for any dispute to be brought,
> heard or arbitrated by a current or former employee as a class or collective action.

(Def.'s Mot., Exs. 1-9 at ¶¶ 21, 22).  Through its 12(b)(1) motion, filed on May 14, 2014, Judge urges that the signed arbitration agreements deprive the court of subject matter jurisdiction.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim for which the district court lacks subject matter jurisdiction.  Till v. Sprint Solutions, Inc.,

3

2010 WL 1257643 (E.D. Pa. Mar. 30, 2010).  A challenge to subject matter jurisdiction can be either facial or factual.  In a facial challenge, the court "review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court."  Id.  (quoting Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994)).  In a factual challenge, the court may consider evidence outside the pleadings.  Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

Pursuant to the Federal Arbitration Act ("FAA") § 4, "[A] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  In granting such an order, a court must consider: (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the plaintiff's claims fall within the scope of the arbitration agreement.  Marciano v. MONY Life Ins. Co., 470 F.Supp.2d 518, 525 (E.D. Pa. 2007).

IV.    **DISCUSSION**

The FAA provides that agreements to resolve disputes by arbitration "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999) ("[The FAA] makes arbitration agreements enforceable to the same extent as other contracts").  The United States Supreme Court has acknowledged that the arbitrability of a particular dispute is to be determined with a "healthy regard for the federal policy favoring arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 24 (1983).  Here, Plaintiffs do not contest the validity of the arbitration provision, nor do they assert that their claims fall outside the scope of the agreement.  Rather, Plaintiffs argue that Defendant

4

waived its right to arbitration through its litigation activity, and that Defendant's implementation of an arbitration agreement for new employees, subsequent to the commencement of litigation, constituted an improper communication with putative class members.

## A. Waiver

Plaintiffs' primary argument is that Defendant waived its right to arbitration through its litigation activity. Plaintiff cites Defendant's attempts to defeat Plaintiffs' motion for conditional certification, Defendant's motion to dismiss, motion for sanctions, motion for interlocutory appeal, and the degree to which both Parties have engaged in discovery. Defendant responds that during the period in which arbitration became available, namely between November 21, 2013 (the date on which Plaintiff Demrow opted-in the current action) and Defendant's notification to Plaintiffs regarding its intention to enforce the arbitration agreements in April 2014, it engaged in limited litigation activity, none of which imposed any prejudice on the Arbitration Plaintiffs.

In this Circuit, the district court, rather than an arbitrator, decides questions of waiver based on litigation conduct.[1]  See, e.g., Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217 (3d Cir. 2007).  Courts will not lightly infer that a party has waived its right to arbitrate and will find waiver only when "the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery."  Gray Holdco, Inc. v. Cassady, 654 F.3d 444,

---

[1] Defendant also argues that because each arbitration agreement provides that "disputes regarding the validity of [the arbitration] provision, shall be settled exclusively by arbitration," any threshold question of arbitrability should be determined by an arbitrator, not the Court. Defendant's contention is supported by Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 65 (2010), in which the Supreme Court held that a plaintiff's failure to specifically challenge the validity of the delegation provision in his agreement obliged the court to defer all questions of arbitrability to the arbitrator.  Id. at 86.  However, because Plaintiff has not challenged the validity of the arbitration agreements themselves, we need not address this issue.

451 (3d Cir. 2011) (quoting <u>PaineWebber Inc. v. Faragalli</u>, 61 F.3d 1063, 1068–69 (3d Cir. 1995)).  "[W]aiver . . . must be established by clear and convincing proof that the party requesting a stay of judicial proceedings has acted in a manner inconsistent with arbitration and that these inconsistent acts have prejudiced the other party." <u>Davis-Clemens Const. Co., Inc. v. S.I.W. Int'l, Inc.</u>, 1992 WL 102877, at *3 (E.D. Pa. May 6, 1992) (quoting <u>UMC Petroleum Corporation v. J & J Enterprises, Inc.</u>, 758 F.Supp. 1069, 1072 (W.D. Pa. 1991)); see <u>Ehleiter v. Grapetree Shores, Inc.</u>, 482 F.3d at 222; <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>, 980 F.2d 912, 925 (3d Cir. 1992).

In assessing prejudice, relevant factors for consideration include: (1) timeliness or lack thereof of the motion to arbitrate; (2) the extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.  <u>Ehleiter</u>, 482 F.3d at 222.  Holistic analysis of all factors dictates a court's finding of waiver.  <u>Zimmer v. CooperNeff Advisors, Inc.</u>, 523 F.3d 224, 232 (3d Cir. 2008) ("[O]ur precedents do not support the notion that the single consideration . . . is sufficient to find prejudice, and therefore waiver.").

In addressing the first factor—timeliness, Plaintiffs evaluate Defendant's conduct beginning with the commencement of the litigation in November 2011, rather than when the first Arbitration Plaintiff opted in (November 21, 2013).  Thus, Plaintiffs contend that Defendant inexplicably waited two-and-a-half years to file its motion to dismiss.  We disagree with this

proposed time period because, in actuality, the opportunity to move to dismiss arose in November 2013, when the first Arbitration Plaintiff opted in.

Though the seven month delay between the first opt-in and the filing of Defendant's motion is not trivial, we must view it in light of the particular circumstances of this case. Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 451 (3d Cir. 2011) ("[T]he answer to the question of whether a party invoking the arbitration clause waived its right to arbitrate is necessarily case specific and thus depends on the circumstances and context of each case."). Because some of its "Professional Day" and "Professional Week" employees signed arbitration agreements while others did not, Defendant could not have known which or how many members of the class had agreed to arbitration until the end of the opt-in period. While Defendant's motion to dismiss was filed seven months after the date on which the first Arbitration Plaintiff opted in, it followed shortly after the Court ordered April 4, 2014 deadline for producing the names of all of the opt-ins. Moreover, "the length of . . . time involved. . . alone is not determinative" of whether a party has waived its right to arbitration. Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 232 (3d Cir. 2008) (quoting Palcko v. Airborne Express, Inc., 372 F.3d 588, 598 (3d Cir. 2004)); see Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 454-55 (3d Cir. 2011). ("[W]e agree . . . that the ten-month period between [the] initiation of the lawsuit in the District Court and [the] initiation of arbitration . . . is not, standing alone, outcome determinative on the waiver issue . . . .").

Regarding the second factor, Plaintiffs assert that Defendant has aggressively contested the merits of Plaintiffs' claim, citing Defendant's filing of a motion for summary judgment (Jan. 23, 2012), Defendant's attempts to defeat Plaintiffs' motion for conditional certification (Mar. 5, 2012; June 29, 2012; Jan. 22, 2013), as well as Defendant's motion to dismiss (Nov. 22, 2011), motion for sanctions (Nov. 29, 2012), and motion for interlocutory appeal (Nov. 4, 2013).

However, none of this activity occurred during the seven month time span after the first Arbitration Plaintiff opted in, and therefore it does not weigh in support of waiver.

Concerning the third factor—notification of Arbitration, Plaintiffs aver that Defendant failed to inform them in a timely manner of its intention to compel arbitration. They point to the fact that Defendant inserted an arbitration clause in its standard employment agreement nearly two years before filing its motion to dismiss.[2]   However, because the FLSA requires each plaintiff to opt into the class, Defendant could not have known that the class would contain any Arbitration Plaintiffs until the first one opted in.  Thus, Defendant did not bear the responsibility to notify Plaintiffs of its intention to enforce the arbitration agreements before this event occurred.  See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1525 (2013) ("[U]nder the FLSA, conditional certification does not produce a class with an independent legal status, or join additional parties to the action").

Regarding the fourth factor, Defendant did not participate in non-merits motion practice between November 2013 and May 2014.  Plaintiffs again cite to Defendant's activity beginning with the commencement of the suit through the filing of Defendant's motion for interlocutory appeal in November 2013, but all of that occurred before the first Arbitration Plaintiff opted in.

Defendant did engage in limited litigation between November 2013 and May 2014.  During that period, we denied Defendant's motion for interlocutory appeal, which had been filed on November 4, 2013, and ordered the parties to exchange information about those Plaintiffs who had opted in.  While Defendant did comply with the Court's December 12, 2013 Order to identify all employees who it believed did not work more than forty hours in any week during the statute of limitations period, its acquiescence with our directives must be contextualized with

---

[2] The earliest employment start date of the Arbitration Plaintiffs was July 25, 2012.  (Def. Mot., Ex. 6, ¶ 21.)

8

the fact that the majority of the class did not sign arbitration agreements.  Thus, this action would have proceeded in some measure regardless of whether the arbitration agreements signed by some class members were enforced.  Further, while Plaintiff cites a number of docket entries reflecting Defendant's activities between conditional certification and this motion, that activity largely related to our efforts to facilitate an exchange of information regarding the final composition of the conditionally certified class.  Defendant filed its motion to dismiss shortly after that process was completed.

The final factor, which examines the extent to which the parties have engaged in discovery, must also be scrutinized in light of the fact that discovery would commence as to the non-arbitration plaintiffs regardless of the fate of the Arbitration Plaintiffs.  That aside, between November 2013 and May 2014, the Court limited discovery to two sets of interrogatories.  While not insignificant, we do not find that this limited written discovery significantly prejudiced Plaintiffs.

Evaluation of all relevant factors leads us to conclude that Defendant did not waive its right to arbitration.  With prejudice as the touchstone for judicial determination of waiver, we find Plaintiffs' argument that the Arbitration Plaintiffs suffered as a result of Defendant's activity unpersuasive.

**B.  Improper Communication with Putative Class Members**

Plaintiffs additionally assert that by implementing an arbitration agreement for new employees without notifying them of this litigation, "Defendant was obviously acting to limit its exposure to Plaintiffs' FLSA claim and to make the collective treatment of that claim more difficult."  (Pl.'s Resp.. 11.)    To support this contention, Plaintiffs rely upon Williams v. Securitas Sec. Services USA, Inc., 2011 WL 2713741 (E.D. Pa. July 13, 2011), where the court

declined to enforce arbitration agreements that the defendant imposed on its current employees while an FLSA action was pending.  The <u>Williams</u> court, assuming the responsibility to ensure that all parties acted fairly while the court decided whether and how the suit would progress, found the arbitration agreement to be "a confusing and unfair communication with the class of possible plaintiffs," and therefore ordered the defendant to rescind the arbitration agreement.  <u>Id.</u> at 3.  <u>Williams</u> is distinguishable in several respects.

First, the defendant in <u>Williams</u> circulated an arbitration agreement to all of its employees, which applied to "all [a]ctions in which [an employee was] not a plaintiff or part of a certified class."  <u>Id.</u> at 1.  The document then listed five representative or class action lawsuits in which the defendant was already involved, including the plaintiffs' contested FLSA action.  Thus, in <u>Williams</u>, the defendant imposed a binding arbitration agreement on individuals who may have otherwise met the criteria for opting into a pending class action.

The Arbitration Plaintiffs in this case were new employees, none of whom had performed any work for Defendant, let alone worked hours over forty for which they were not paid an overtime premium.  In the complaint, Plaintiff Jones identified the class of potential plaintiffs as:

> All individuals who currently work, or have worked, for Defendant as hourly paid employees during the applicable statute of limitations period but who were not paid an overtime premium of 1½ time their regular hourly rate for all time worked in excess of 40 hours per week.

(Compl. ¶ 8.)  At the time they signed their employment agreements, the Arbitration Plaintiffs had not met these criteria.  Further, all but one Arbitration Plaintiff signed his or her agreement prior to Plaintiff's filing his motion for conditional certification, and all signed before the motion was granted.

While the court has the discretion and in fact the obligation to manage the actions of the parties in order to prevent unfair or misleading communications and to facilitate notice,[3] the communications at issue occurred before we approved the issuance of notice.  In other words, Plaintiffs ask us to limit communications between an employer and prospective employees who may, in the future, meet the criteria for opting into a class that had not yet been conditionally certified when the communications took place.

We do not find that Defendant's failure to disclose the pendency of this litigation rises to the level of improper communication, as the Arbitration Plaintiffs had no present right to join the action when they signed their agreements.  Simply put, despite Plaintiffs' insistence to the contrary, the Arbitration Plaintiffs were not class members or putative class members at that time.  Even if they had been, we would not limit communications unless those communications were actually abusive.  See Parks v. Eastwood Ins. Servs., Inc., 235 F.Supp.2d 1082 (C.D. Cal. 2002) ("[A] defendant employer may communicate with prospective plaintiff employees who have not yet 'opted in,' unless the communication undermines or contradicts the Court's own notice to prospective plaintiffs.").  We find that neither the arbitration agreement itself, nor the manner in which it was implemented were misleading or confusing such that corrective action is required.

Williams is further distinguishable because the defendant in that case distributed an arbitration agreement consisting of ten paragraphs, written in small font, on five type-written, single-spaced pages.  Williams, 2011 WL 2713741, at *1.  That agreement did not require explicit consent in order to bind employees, but rather, construing an individual's continued

---

[3] See Williams, 2011 WL 2713741, at *2 ("As the Supreme Court has noted, actions under § 216(b) 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" (quoting Hoffman–La Rouche, Inc. v. Sperling, 493 U.S. 165, 171 (1989)).

employment as acknowledgement of the proposed agreement, required employees to affirmatively opt out if they did not wish to be bound.  The opt-out process necessitated each employee to call a toll-free telephone number within thirty days of receiving the agreement.  Id. at 2.  Thus, the document's terms, which had not been previously negotiated, bound each employee even if left unsigned.  Id.  More confusingly, the fifth and final page of the agreement stated, "By signing below, I am acknowledging receipt of the Securitas Security Services USA, Inc. Dispute Resolution Agreement, effective immediately," and included space to sign and date the document.  Id.

Under those circumstances the court concluded that the defendant had intentionally crafted its arbitration agreement to be unclear, noting the document's especially "long and complex" paragraphs and sentences, as well as its "heavy use of legal jargon."  Id. at 3.  The court suggested that a lay person's reasonable belief that an agreement does not become effective without affirmative approval would likely lead employees to not read the document carefully or at all.  Id.  This practice, the court stated, "[stood] the concept of fair dealing on its head and [was] designed to thwart employees . . . from participating in [the] lawsuit."[4]  Id. at 2.

By contrast, here, Defendant's employment agreement with the Arbitration Plaintiffs consists of twenty-one numbered paragraphs on two and a half pages.  The arbitration clause is

---

[4] Plaintiffs cite numerous other cases that similarly involve conduct found to be clearly confusing or misleading.  For example, in In re Sch. Asbestos Litig., 842 F.2d 671 (3d Cir. 1988), representatives of the corporate defendants distributed "educational" booklets to school officials, without identifying its connection with the defendants, while the litigation was pending.  The district court found that the circulation of the booklet, which aimed to "convince members of the plaintiff class to forego asbestos removal in their buildings[,] . . . [would] result in confusion and adversely affect the administration of justice."  In re Sch. Asbestos Litig., 842 F.2d 671, 683 (3d Cir. 1988) (internal citations omitted); see also Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1197 (11th Cir. 1985) (affirming the district court's imposition of sanctions against defendant bank and its counsel for extensive telephone campaign shrouded in "secrecy and haste").

stated in comprehensible language and is formatted in the same standard, legible typeface and font size as the rest of the agreement.  In addition, the agreement did not become effective until signed.  (Def.'s Mot., Exs. 1-9 at ¶¶ 21, 22.)  The arbitration agreements simply do not contain the sort of confusing, misleading or unfair communication that warrants our intervention. Accordingly, we will dismiss the claims of the Arbitration Plaintiffs.[5]

## V.   **CONCLUSION**

For the reasons set forth above, Defendant's "Motion to Dismiss Claims of Plaintiffs Demrow, Harris, Shah, Anepete, Govoni-Drygal, Givens-Walker, Chowdhury, Richtiger, and Wise" will be granted.  An appropriate order follows.

---

[5] The FAA provides that when an action is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  The United States Court of Appeals for the Third Circuit has held that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004).  However, neither party has requested a stay here.  Therefore, we will dismiss the Arbitration Plaintiffs' claims without prejudice to their ability to pursue arbitration.